UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRINITY GLASS INTERNATIONAL, INC., a Washington Corporation, and RIGHT CONCEPT, INC., a Washington Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>LG CHEM LTD., a Korean Corporation, and LG CHEM AMERICA, INC., a New Jersey Corporation,<br><br>Defendants. | Case No. 09-5018RJB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL |

This matter comes before the Court on Defendants' Motion to Compel Immediate Release of Doors Selected for Testing (Dkt. 21). The Court has considered the relevant documents and the remainder of the file herein.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On November 13, 2008, Plaintiffs filed a civil case in Washington State Superior Court alleging breach of contract, promissory estoppel, negligent misrepresentation, fraud, and tortious interference with business expectancies by the Defendants. Dkt. 1. On January 14, 2009, the Defendants removed the case from Superior Court to this Court based on diversity jurisdiction. *Id*. The Defendants now move to compel production of doors in the possession of Right Concept, Inc. Dkt. 21.

Plaintiffs Trinity Glass International, Inc. ("Trinity") and Right Concept, Inc. ("RC") are

ORDER - 1

1  door manufacturers based in Pierce County.  Dkt. 5 at 3.  They assemble, buy, and sell doors that
2  include decorative glass panels called "doorlites."  *Id*.  Defendant LG Chem Ltd. ("LG") is a
3  South Korean corporation that, among other things, formulates polycarbonate plastic alloy
4  resins.  *Id*.  Defendant LG Chem America, Inc. ("LG America") is a New Jersey corporation that
5  is LG Chem Ltd.'s marketing subsidiary in the United States.  *Id*.

6  In 2001, the Defendants contacted Trinity about becoming a second source of supply for
7  the plastic resin that Trinity used to fabricate its plastic doorlite frames.  *Id*.  In response to
8  Trinity's request, LG Chem Ltd. developed a plastic resin called LUPOY EU-5007 ("Lupoy")
9  and began selling the product directly to Trinity.  *Id*.  In 2006, Plaintiffs allege that the doorlite
10 frames made of Lupoy were cracking and breaking.  Due to the cracking of the doorlite frames,
11 Trinity and Right Concept filed a complaint against the LG Chem and LG America alleging that
12 defective plastic resins were responsible for the damaged doorlite frames.  Dkt. 1

13 The parties have begun discovery in this case, and they have agreed that Defendants'
14 experts may conduct a failure analysis of the finished frames.  Dkt. 21, p. 3.  Plaintiffs prepared
15 an inventory of 8,800 doors at the Right Concept warehouse, using an inventory plan devised by
16 Defendants' expert.  *Id*.  From that inventory the Defendants' experts generated a random
17 selection process, which resulted in selection of 200 of those doors for further analysis.  *Id*.
18 Defendants have agreed to pay the costs that Plaintiffs have incurred in preparing an inventory of
19 8,800 doors, and in culling the 200 selected doors from the larger population.  Dkt. 25, p. 4.
20 Defendants are also paying the costs for crating and shipping the doors to Menlo Park,
21 California.  *Id*.  The 200 doors have been culled, placed on pallets, shrink-wrapped, and are
22 ready to ship.  *Id*.  However, the Plaintiffs refuse to release the doors until they are paid
23 wholesale prices for the doors,  an estimated cost of $80 - $120 per door for a total of $16,000 -
24 $24, 000.  *Id*.  Counsel for the parties have met and conferred by telephone on February 4 and 5,
25 2010, and in person on February 9, 2010, but were unable to resolve this dispute.  *Id*.

## II. DISCUSSION

27 A party seeking discovery may move for an order compelling production.  Fed.R.Civ.P.
28 37(a)(3)(B).  A party may serve on any other party a request, within the scope of 26(b), to test

ORDER - 2

1  any designated tangible thing. Fed.R.Civ.P. 34(a). A party may obtain discovery regarding any
2  nonprivileged matter that is relevant to any party's claim or defense. Fed.R.Civ.P. 26(b).
3  However, all discovery is subject to the limitations imposed by Rule 26(b)(2)(C). Fed.R.Civ.P.
4  26(b)(1). The court must limit the frequency or extent of discovery otherwise allowed by the
5  rules: (1) if discovery sought is unreasonably cumulative; (2) if the party seeking discovery has
6  had ample opportunity to obtain the information; or (3) the burden or expense of the proposed
7  discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(C).

8        Defendants argue that the parties agree that the inspection and testing of the doors is a
9  legitimate subject of discovery. Dkt. 21, p. 4. However, there is a disagreement as to who
10 should bear the cost of destruction of the doors. Defendants argue that there is a presumption
11 that the responding party must bear the cost of complying with discovery requests. Dkt. 21, p. 5.
12 Moreover, the Defendants argue that there are no costs to the discovery since they have already
13 paid for crating and shipping of the doors. *Id*. Defendants assert that the request for payment by
14 Plaintiffs amounts to prepayment of damages yet to be determined. *Id*. Finally, Defendants
15 assert that there is no basis in law for paying for the value of item produced. Dkt. 21, p. 7.

16       Plaintiffs make several arguments against production of the doors without payment by
17 Defendants. Dkt. 24. However, Plaintiffs' various arguments are without merit. Plaintiffs first
18 assert that doors are tangible personal property, and are unique items that cannot be copied like
19 documents. Dkt. 24, p. 6-7. Moreover, the Plaintiffs state that the general rule is that, even for
20 paper documents, the requesting party must pay for the copies it wants. Dkt. 24, p. 6. Plaintiffs
21 argue that the general rule recognizes that parties are entitled to "inspect"original documents
22 under Rule 34(a)(1)(B), not take actual possession or destroy them. Plaintiffs assert that the rule
23 is also proper for tangible items. Additionally, since there is no way to make a copy of a door,
24 Plaintiffs argue that the Defendants must pay for the door. Plaintiffs also make several other
25 arguments which boil down to arguments related to the cost of production, the value of the
26 doors, and where the burden should be placed.

27       First, there is a difference between the cost of production and the value of the item
28 produced in discovery. The cost of production are the costs that are required to produce a

ORDER - 3

document or an electronic file, i.e. the labor involved in producing an item in accordance with discovery rules. In this case, the Defendants have already paid for the cost of production by agreeing to pay for the culling, packaging, and shipping of the doors. While the Plaintiffs may argue that the doors have value and that the Defendants should pay for the doors *ex ante*, the value of the doors are not a cost of production. The Plaintiffs have not cited any case law and the Court has not found any case law that stands for the proposition that in addition to the cost of production, the requesting party must also pay for the value of the tangible item produced.

Moreover, the value of the doors is related to the cost of production, but to damages alleged by the Plaintiffs. Whether in tort, contract, or UCC, damages include market value minus any salvage value. *See* 25 Wash.Prac., Contracts § 14:1, et seq., 16 Wash.Prac, Torts § 5.1 et seq., and RCW 62A.2-714. In this case, the doors are the object of the suit. Damages will be calculated based on the various legal theories involving the doors. The Plaintiffs are not placed in any worse position by having to bear the cost of the destruction of the doors because the value of the doors is already contemplated by damage calculations, i.e. salvage value or mitigation value.

Next, Plaintiffs cite the four part test in *Mirchandani v. Home Depot*, 253 F.R.D. 611 (D. MD. 2006) regarding destructive testing. Dkt. 24, p. 5. Plaintiffs state that the fourth prong of the test needs to be "enforced", which states that a court may consider "whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial." *Michandani*, 253 F.R.D. at 614, Dkt. 24, p. 5. However, as noted above, the Plaintiffs are not placed in any worse position. Moreover, the destruction of the doors without prepayment does not affect the Plaintiffs' ability to present evidence at trial. The Defendants are sampling only 200 of the 8,800 doors. The destruction of the 200 doors does not affect the ability of the Plaintiffs to take a sampling of the remaining doors in order to rebut any Defendants' theories resulting from the testing. The Court fails to see how the Plaintiffs are prejudiced or how their ability to present evidence at trial is affected by the Defendants not paying for the doors or destroying the doors.

1  Next, the Plaintiffs argue undue burden under Fed.R.Civ.P. 26(b)(2)(C). The burden of
2  the production largely has been borne by the Defendants in this case. Defendants have paid for
3  the culling, packing, and shipping of the doors. The doors are sitting on pallets waiting to be
4  released. Plaintiffs have not alleged that they have not been compensated for production of the
5  doors or that the shipping of the doors would be overly burdensome. Plaintiffs merely allege
6  that it is a burden not to be paid the salvage value of the doors. When weighed against the
7  Defendants' interest in defending themselves against the Plaintiffs' claims, the burden or
8  expense of the proposed discovery clearly does not outweigh its likely benefit.
9  Plaintiffs finally make an argument for cost shifting, but as discussed above, this is not a
10 cost of production, but a value related to damages. Therefore, there are no costs to shift. For the
11 foregoing reasons, the Defendants' Motion to Compel should be granted.

### III. ORDER

The Court does hereby find and ORDER:

(1) Defendants' Motion to Compel (Dkt. 21) is **GRANTED**;

(2) Plaintiffs are directed to produce the aforementioned doors forthwith and without delay;

(3) Each party will bear its own costs in bringing and replying to this motion; and

(4) The Clerk is directed to send copies of this Order all counsel of record and any party appearing *pro se* at said party's last known address.

DATED this 11th day of March, 2010.

Robert J. Bryan
United States District Judge

ORDER - 5