UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRINITY GLASS INTERNATIONAL, INC., a Washington corporation, and RIGHT CONCEPT, INC., a Washington corporation,<br><br>Plaintiffs,<br><br>v.<br><br>LG CHEM, LTC., a Korean corporation, and LG CHEM AMERICA, INC., a New Jersey corporation,<br><br>Defendants. | Case No. 09-5018RJB<br><br>ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment Dismissing Plaintiffs' Claim for "Liability to Capstone," and Dismissing All Claims of Plaintiff Right Concept (Dkt. 34).  The Court has considered the motion, responses, and the remainder of the file herein.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A.  Background**

On November 13, 2008, Plaintiffs Trinity Glass International, Inc. ("Trinity") and Right Concept, Inc. ("Right Concept") filed a Complaint in the Superior Court of Washington alleging that Defendants LG Chem, Ltd., a Korean corporation ("LG Chem") and LG Chem America, Inc. ("LG America"), among other things, breached their contractual obligations to the Plaintiffs,

ORDER - 1

1  made negligent misrepresentations, and interfered with business expectancies.  Dkt. 1.  On

2  January 14, 2009, Defendants removed the case to this Court.  Dkt. 1.

3        Plaintiff Trinity makes and sells fiberglass doors using high-strength plastic doorlite

4  frames.  Dkt. 34, p. 4, Dkt. 44, p. 2.  Trinity is a closely held corporation owned by shareholders

5  Jong Young Ham, Yang Ho Ham and Ki Young Ham.  Dkt. 34, p. 4.

6        In 2000, Trinity began purchasing a PolyCarbonate-Acrylonitrile Styrene Acrylate ("PC-

7  ASA") resin alloy called "Geloy" to make doorlite frames.  Dkt, 34, p. 4, Dkt. 44, p.2.  In 2001,

8  Trinity and LG Chem began discussing the development of another PC-ASA resin that Trinity

9  could use as a second supply source.  *Id*.  Ultimately, Trinity started buying the new PC-ASA

10  called "Lupoy EU5007" from LG America, which was manufactured in Iksan, Korea by LG

11  Chem.  Dkt. 34, p. 4.  Plaintiffs state that in order to get Trinity to buy Lupoy, LG Chem

12  promised that its resin would be as good or better than Geloy and that it would support and assist

13  Trinity with services including technical analysis, product testing, trouble shooting and problem

14  solving.  Dkt. 44, p. 3, Dkt. 34, p. 4.

15        In 2004, one of Trinity's shareholders, Mr. Jong Young Ham, formed a separate Chinese

16  corporation called Dalian Capstone Engineering, Ltd ("Capstone"), located in Dalian, China.

17  Dkt. 34, p. 5, Dkt. 44, p. 4.  The new corporation was formed to manufacture doors and frames

18  for Trinity.  Dkt. 44, p. 4.  Plaintiffs state that to keep and expand LG's business with Trinity,

19  LG promised that if Trinity specified Lupoy for its new doors, LG would supply the same resin

20  to Capstone as it supplied to Trinity in the U.S.  *Id*.

21        In 2005, Capstone began manufacturing doors with new doorlite frames made from

22  Lupoy resin purchased from LG Chem in Korea.  Dkt. 34, p. 5.  In late 2005, the principals of

23  Trinity decided to modify their business structure and formed Right Concept, Inc., as a separate

24  Washington State corporation to purchase doors from Capstone for resale to Trinity and third

25  parties.  Dkt. 44, p. 5, Dkt. 34, p. 5-6.

26        Also in 2005, Plaintiffs state that a LG Chem employee named Mr. In Hong Koh reported

27  to Mr. Yoon of Capstone that LG Chem was setting up a new resin factory in Tianjian, China.

28  Dkt. 44, p. 5-6.  Defendants state that after the initial contact with LG Chem, a salesperson from

ORDER - 2

LG Chem Tianjin, Mr. Hak Jae Kim, visited Capstone and Mr. Yoon. Dkt. 34, p. 6. Plaintiffs state that LG confirmed that the product manufactured in Tianjin would be the same as the product produced from the LG Chem factory in Iksan, Korea. *Id*. Mr. Yoon then reported the information to Mr. Sibbett, President of Right Concept.[1]  Dkt. 34, p. 6, Dkt. 44, p. 5. Plaintiffs state that Mr. Sibbett then directed Capstone to use Lupoy from LG Tianjin. Dkt. 44, p. 6. In March 2006, Capstone began purchasing Lupoy for LG Chem Tianjin. Dkt. 34, p. 7.

In 2006, Mr. Sibbett noticed some frame cracking on doors at a trade show. Dkt. 44, p. 6. From 2006 to 2008, Trinity, Right Concept, Capstone Korea and Dalian Capstone repeatedly sought LG's help in trying to figure out the problem with cracking. Dkt. 44, p. 6. After failing to resolve issues arising from the cracking problem, the Plaintiffs filed a complaint seeking damages under various theories. Dkt. 1.

**B.  Motion for Partial Summary Judgment**

On April 29, 2010, Defendants filed a motion for partial summary judgment. Dkt. 34. The Defendants are asking that the Court dismiss both Plaintiffs' claims for "Liability to Capstone," and dismiss all claims of Plaintiff Right Concept entirely and with prejudice. Dkt. 34, p. 25. Plaintiffs allege that, beginning in 2006, doorlite frames manufactured by Capstone began to exhibit cracks. Dkt. 34, p. 8. Plaintiffs allege that, from 2006 into 2008, Plaintiffs and Capstone tried unsuccessfully to resolve the cracking problem, both on their own and by enlisting help from LG Chem. *Id*. On May 1, 2008, Right Concept sent a claim letter to Capstone, seeking replacement of 32,512 doors valued at $2,170,509.38 and an additional $200,000 in customer service costs. *Id*. On May 8, 2008, Capstone sent a claim letter to LG Chem Tianjin seeking $3,608,976.11 in damages due to allegedly defective frames sold to consumers in America and Korea. *Id*. On August 21, 2008, LG Chem Tianjin filed an Application for Arbitration before the Tianjin Arbitration Commission, seeking RMB 4,409,879.40 owed to it by Capstone. *Id*. However, on September 23, 3008, Capstone and LG

---

[1] Mr. Sibbett's "functioning title," as he called it, was president of Right Concept. Dkt. 34, p. 6, n. 8, Dkt. 44, p. 5, n. 2. However, the corporate president is Mr. Jong Ham, while Mr. Sibbett is the vice president. *Id*.

ORDER - 3

Chem Tianjin settled their dispute. *Id*. Defendants state that the settlement agreement provided that any disputes related to the agreement or the settlement would also be submitted to the Tianjin Arbitration Commission. *Id*.

Defendants state that two months later Plaintiffs filed their Complaint. Dkt. 34, p. 9. Defendants state in their motion for partial summary judgment that Plaintiffs included in their damages calculations a category called "Liability to Capstone." Defendants state that the damages were not incurred by Plaintiffs themselves; rather, they were expenses allegedly incurred by non-party Capstone. Dkt. 34, p. 9-10. Defendants state the Plaintiffs contend that they are obligated to reimburse Capstone for these expenses, which allegedly were incurred as a result of the frame cracking problem. Dkt. 34, p. 10. Defendants state that the claimed Capstone damages exceed $11 million and are the very same damages that Capstone earlier was claiming against LG Chem Tianjin.

Defendants also state in their motion for partial summary judgment that Right Concept claims damages from doors it purchased from Capstone. Dkt. 34, p. 11. Defendants state that Right Concept alleges that it ordered and paid for 40,479 doors from Capstone, but the doors were not merchantable due to defective frames. *Id*. Defendants state that Right Concept seeks damages for the cost of these doors, as well as for costs of returns to date, cost of future returns, lost profits, and damage to reputation. *Id*.

## II. DISCUSSION

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

1    metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a
2    material fact exists if there is sufficient evidence supporting the claimed factual dispute,
3    requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty*
4    *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*
5    *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

6    The determination of the existence of a material fact is often a close question. The court
7    must consider the substantive evidentiary burden that the nonmoving party must meet at trial –
8    e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect.*
9    *Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor
10   of the nonmoving party only when the facts specifically attested by that party contradict facts
11   specifically attested by the moving party. The nonmoving party may not merely state that it will
12   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial
13   to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.
14   Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not
15   be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

16   As a preliminary matter, the Plaintiffs moved to strike certain exhibits. Dkt. 44, p. 9 n. 7
17   Plaintiffs' motion to strike should be denied. The Court will consider the exhibits in the light
18   they are presented and give it their due weight.

19   **A. Standing to Bring Claims Against Capstone**

20   Defendants argue that Plaintiffs lack standing to recover damages incurred by Capstone.
21   Dkt. 44, p. 12. Defendants appear to argue that Plaintiffs lack standing because Capstone, Right
22   Concepts, and Trinity are legally separate business entities, and therefore, Plaintiffs cannot bring
23   a suit for damages on Capstone's behalf. Dkt. 34, p. 12-16. Defendants state the Plaintiffs are
24   not alleging damage to any property or interest that they own but rather are attempting to recover
25   the damages of another. Dkt. 34, p. 16. Therefore, Defendants contend, Plaintiffs have not
26   suffered an actual injury with respect to Capstone's costs.

27   Plaintiffs state that Defendants do not argue that Plaintiffs suffered no damage as a result
28   of their misconduct. Dkt. 44, p. 17. Rather, Plaintiffs state, Defendants argue that some of the

ORDER - 5

damages Plaintiffs seek to recover are for harm suffered by Capstone. *Id*. Additionally, Plaintiffs state that other damages they seek have some relation to Capstone, but nevertheless belong to Plaintiffs. *Id*.

Standing is a question of whether a plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify the exercise of the court's remedial powers on his behalf. *Washington Legal Foundation v. Legal Foundation of Washington*, 271 F.3d 835, 847 (9th Cir. 2001). There are three requirements for standing: (1) a plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of - the injury must be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision. *Id*.

The relationship between Capstone, Right Concept, and Trinity are still left to be resolved, and the potential theories of the case are still yet to presented. It is inappropriate at this stage to decide on whether Plaintiffs have standing in regards to Capstone's potential claims without resolving the relationship between the many entities involved in this case. Moreover, there appears to be a disagreement among the parties regarding control of Capstone and the events leading up to this action. Without knowing the relationships between the parties and other entities, the Court cannot determine if there were legally protected interests that were invaded. Therefore, the Defendants' summary judgment regarding "Liability to Capstone" should be denied.

**B. Contract Between Right Concept and Defendants**

Defendants contend that there is no contract claim in this case under which Right Concept can recover its own alleged damages. Dkt. 34, p. 16. Defendants state that Right Concept alleges the existence of two contracts directly between it and the Defendants. Dkt. 34, p. 17. Defendants state that Right Concept alleges:

ORDER - 6

- breach of defendants' contract with Trinity and Right Concept to cause their affiliate in China to supply resin to Capstone that met agreed specifications and was as good or better than the resin Trinity had been using; and
- breach of defendants' contract with Trinity and Right Concept to investigate, and accurately and fully report on, the cause of the cracking problems that plaintiffs were experiencing.

Dkt. 34, p. 17, Dkt. 9, p. 7. Defendants state that the first alleged contract is barred by the statute of frauds and for lack of independent consideration. Dkt. 34, p. 17. Plaintiffs respond by stating that Defendants do not deny that Lupoy was supplied to Capstone or that the Defendants stated that the Lupoy would be as good or better than Geloy for the production of frames. Dkt. 44, p. 18. Plaintiffs also state that Defendants "proposed that Trinity and Right Concept specify Lupoy and promised to assure the quality of the resin and to provide technical support." *Id*.

Defendants argue that the Uniformed Commercial Code ("UCC") Statute of Frauds applies in this situation and there must be a writing indicating a sale of goods. *See* RCW 62A.2-201, Dkt. 34, p. 17. However, Defendants abandon the UCC in arguing that there was a lack of consideration. Under RCW 62A.2-204, a contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract. If this was a contract for goods, then this UCC provision would apply. If this was not a contract for goods, then other law would apply. At this point, the Court is uncertain as to whether there was a contract, and if so, whether it was a contract for goods or a contract for services.

Additionally, it appears that the parties are arguing about two different events. Plaintiffs argue that the alleged contract was a promise that they would specify the use of Lupoy for the promise that the resin supplied to Capstone would be as good as or better than the resin supplied to Trinity. Dkt. 44, p. 4. Defendants argue that the event was the switching of the production of Lupoy for Capstone from LG Chem to LG Chem Tianjin. Dkt. 34, p. 18. Without knowing the event or events that gave rise to an alleged contract, the Court is unable to determine if a valid contract was formed. The second alleged contract suffers from similar shortcomings. There is a question of the events leading up to the formation of the alleged contract, what the terms of the

ORDER - 7

alleged contract were, and whether the terms were specific enough to be enforceable. For the foregoing reasons, the Defendants' motion for summary judgment as to the contracts should be denied.

**C. Economic Loss Rule**

Defendants assert that the economic loss rule bars the Plaintiffs' independent tort claims. Dkt. 34, p. 24. Defendants specifically contend that Right Concept's claims of negligent misrepresentation, fraud, and tortious interference are barred. Dkt. 34, p. 25. Defendants argue that Right Concept alleges purely economic loss due to the deterioration of the doorlite frames. *Id*. Defendants state that even if construed as freestanding claims, all of Right Concept's tort claims are barred. *Id*. Plaintiffs claim that absent a contract, the economic loss rule does not apply. Dkt. 44, p. 24.

The economic loss rule "prohibits a plaintiff from recovering tort damages on a cause of action arising out of contractual obligations." *Easter v. Am. W. Fin*., 381 F.3d 948, 956 n. 5 (9th Cir. 2004). "The economic loss rule marks the fundamental boundary between the law of contracts, which is designed to enforce expectations created by agreement, and the law of torts, which is designed to protect citizens and their property by imposing a duty of reasonable care on others." *Berschauer/Philips Constr. Co. v. Seattle Sch. Dist. No. 1*, 881 P.2d 986, 989-90 (Wash. 1994). Without the economic loss rule, "a party could bring a cause of action in tort to recover benefits they were unable to obtain in contractual negotiations." *Id*. at 992.

In this case, the economic loss rule applies only when there is a contract. Defendants argue that a contract is not required in order for the economic loss rule to apply. However, the cases cited by the parties require a contract in order to divide remedies between tort and contract. *See Alejandre v. Bull,* 153 P.3d 864, 867 (Wash. 2007) ("The economic loss rule applies to hold parties to their contract remedies when a loss potentially implicates both tort and contract relief.") As noted above, there is not enough evidence presented to determine if a valid contract was formed. Without resolution of the contract issue, it is uncertain at this point whether the economic loss rule applies in this case. Therefore, the Defendants' summary judgment as to the economic loss rule should be denied.

### III. ORDER

The Court does hereby find and ORDER:

(1) Defendants' Motion for Partial Summary Judgment (Dkt. 34) is **DENIED**;

(2) Plaintiffs' Motion to Strike (Dkt. 44) is **DENIED**; and

(3) The Clerk is directed to send copies of this Order all counsel of record and any party appearing *pro se* at said party's last known address.

DATED this 8th day of July, 2010.

Robert J. Bryan
United States District Judge