UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TRINITY GLASS INTERNATIONAL, INC.
a Washington corporation, and RIGHT
CONCEPT, INC., a Washington corporation,

          Plaintiffs,

          v.

LG CHEM, LTD., a Korean corporation, and
LG CHEM AMERICA, INC., a New Jersey
corporation,

          Defendants.

Case No.  09-5018RJB

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY
JUDGMENT

      This matter comes before the Court on Defendants' Motion for Partial Summary Judgment (Dkt. 114).  The Court has considered the motion, responses, and the relevant documents herein.

### I. FACTUAL AND PROCEDURAL BACKGROUND

      On November 13, 2008, Plaintiffs, Trinity Glass International, Inc. ("Trinity") and Right Concept, Inc. ("Right Concept"), filed a complaint against Defendants, LG Chem, Ltd. ("LG Chem") and LG Chem America, Inc. ("LG America")(collectively "LG").  Dkt. 1.  Plaintiffs allege, among other things, that LG Chem and LG America breached their contractual obligations, made negligent misrepresentations, and interfered with business expectancies.  *Id*.

ORDER - 1

1    On January 14, 2009, Defendants removed the case to this Court. *Id*.

2    Plaintiff Trinity makes and sells fiberglass doors using high-strength plastic doorlite frames. Dkt. 34, p. 4, Dkt. 44, p. 2. Trinity is a closely held corporation owned by shareholders Jong Young Ham, Yang Ho Ham and Ki Young Ham. Dkt. 34, p. 4.

In 2000, Trinity began purchasing a PolyCarbonate-Acrylonitrile Styrene Acrylate ("PC-ASA") resin alloy called "Geloy" to make doorlite frames. Dkt, 34, p. 4, Dkt. 44, p.2. In 2001, Trinity and LG Chem began discussing the development of another PC-ASA resin that Trinity could use as a second supply source. *Id*. Ultimately, Trinity started buying the new PC-ASA called "Lupoy EU5007" from LG America, which was manufactured in Iksan, Korea by LG Chem. Dkt. 34, p. 4. Plaintiffs state that in order to get Trinity to buy Lupoy, LG Chem promised that its resin would be as good or better than Geloy and that it would support and assist Trinity with services including technical analysis, product testing, trouble shooting and problem solving. Dkt. 44, p. 3, Dkt. 34, p. 4.

In 2004, one of Trinity's shareholders, Mr. Jong Young Ham, formed a separate Chinese corporation called Dalian Capstone Engineering, Ltd ("Dalian Capstone"), located in Dalian, China. Dkt. 34, p. 5, Dkt. 44, p. 4. The new corporation was formed to manufacture doors and frames for Trinity. Dkt. 44, p. 4. Plaintiffs state that to keep and expand LG's business with Trinity, LG promised that if Trinity specified Lupoy for its new doors, LG would supply the same resin to Dalian Capstone as it supplied to Trinity in the U.S. *Id*.

In 2005, Dalian Capstone began manufacturing doors with new doorlite frames made from Lupoy resin purchased from LG Chem in Korea. Dkt. 34, p. 5. In late 2005, the principals of Trinity decided to modify their business structure and formed Right Concept, Inc., as a separate Washington State corporation to purchase doors from Dalian Capstone for resale to Trinity and third parties. Dkt. 44, p. 5, Dkt. 34, p. 5-6.

ORDER - 2

Also in 2005, Plaintiffs state that a LG Chem employee named Mr. In Hong Koh reported to Mr. Yoon of Dalian Capstone that LG Chem was setting up a new resin factory in Tianjin, China (the resin factory will hereafter be referred to as "LG Tianjin"). Dkt. 44, p. 5-6. Defendants state that after the initial contact with LG Chem, a salesperson from LG Tianjin, Mr. Hak Jae Kim, visited Dalian Capstone and Mr. Yoon. Dkt. 34, p. 6. Plaintiffs state that LG confirmed that the product manufactured at LG Tianjin would be the same as the product produced from the LG Chem factory in Iksan, Korea. *Id*. Mr. Yoon then reported the information to Mr. Sibbett, President of Right Concept.[1] Dkt. 34, p. 6, Dkt. 44, p. 5. Plaintiffs state that Mr. Sibbett then directed Dalian Capstone to use Lupoy from LG Tianjin. Dkt. 44, p. 6. In March 2006, Dalian Capstone began purchasing Lupoy for LG Tianjin. Dkt. 34, p. 7.

In 2006, Mr. Sibbett noticed some frame cracking on doors at a trade show. Dkt. 44, p. 6. From 2006 to 2008, Trinity, Right Concept, and Dalian Capstone repeatedly sought LG's help in trying to solve the cracking problem. Dkt. 44, p. 6. After failing to resolve issues arising from the cracking problem, the Plaintiffs filed this complaint seeking damages under various theories. Dkt. 1.

On October 21, 2010, Defendants filed a motion for partial summary judgment. Dkt. 114. The Defendants seek to dismiss three categories of Plaintiffs' damages, and dismissing all tort claims brought by Plaintiff Trinity. Dkt. 114, p. 2. Specifically, Defendants seek to dismiss, as a matter of law, the following: (1) Plaintiffs' claims categorized as "Liability to Capstone"; (2) Plaintiff Trinity's claim for potential, future warranty repairs; (3) Plaintiff Right Concept's claim for "Lost Profits on Lost Sales"; and (4) Plaintiff Trinity's tort claims under the economic loss rule. *Id*.

---

[1] Mr. Sibbett's "functioning title," as he called it, was president of Right Concept. Dkt. 34, p. 6, n. 8, Dkt. 44, p. 5, n. 2. However, the corporate president is Mr. Jong Ham, while Mr. Sibbett is the vice president. *Id*.

## II. DISCUSSION

**A. SUMMARY JUDGMENT LEGAL STANDARD**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

1   Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not
2   be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

3       "The task of a federal court in a diversity action is to approximate state law as closely as
4   possible in order to make sure that the vindication of the state right is without discrimination
5   because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980). Where
6   the state's highest appellate court has not spoken on an issue, the federal court's role is to predict
7   what decision the state's highest court would reach. *See Evanston Ins. Co. v. OEA, Inc.*, 566
8   F.3d 915, 921 (9th Cir. 2009). A federal court uses "intermediate appellate court decisions,
9   decisions from other jurisdictions, statutes, treatises, and restatements as guidance" to predict
10  how the state's highest court would rule. *Assurance Co. of Am. v. Wall & Assocs. LLC of*
11  *Olypmia*, 370 F.3d 557, 560 (9th Cir. 2004). A federal court will follow the decisions of state
12  intermediate appellate courts unless there is "convincing evidence" that the state's highest court
13  would decide the issue differently. *Id*.

14  **B. PLAINTIFFS' CLAIMS CATEGORIZED AS "LIABILITY TO CAPSTONE."**

15      Defendants state that Plaintiffs include in their damages calculation a category titled
16  "Liability to Capstone" in the amount of $9,054,880. Dkt. 114, p. 17. Defendants allege that
17  these damages were not incurred by Plaintiffs, but by Dalian Capstone. *Id*. Defendants contend
18  that Plaintiffs now claim that they have come to a voluntary, unwritten, unfunded agreement with
19  Dalian Capstone for this amount. *Id*. Defendants assert that this category of damages should be
20  dismissed because Plaintiffs do not have standing to bring these claims and that Defendants are
21  not liable to Dalian Capstone. Dkt. 114, p. 17-18.

22      Plaintiffs agree that Right Concept, Trinity, and Dalian Capstone are separate legal
23  entities. Dkt. 125, p. 10. Plaintiffs contend, however, that while Right Concept and Trinity did
24  not exercise corporate control over Capstone, they did exercise control in the sense that, as

1   Capstone's major customers, they directed how the product was to be made and that, given the

2   common ownership, had a cooperative approach to their business. Dkt. 125, p. 9. Additionally,

3   Plaintiffs assert that they are asserting their own claims and not the claims of Dalian Capstone.

4   Dkt. 15, p. 10. Plaintiffs contend that Right Concept and Trinity are liable to Dalian Capstone

5   and assert several theories of liability to support their contention. Dkt. 125, p. 11-22. Finally,

6   Plaintiffs contend that Dalian Capstone's settlement with LG Chem is not dispositive and does

7   not "allow the defendants to avoid its liability." Dkt. 125, p. 22-23.

8       Defendants reply by arguing that Plaintiffs have not shown that Plaintiffs are liable to

9   Dalian Capstone under any of the theories advanced. Dkt. 136, p. 2.

10      Washington State has adopted the federal approach to standing. *See generally Save A*

11  *Valuable Environment v. Bothell*, 89 Wash. 2d 862, 866 (1978); *Magnolia Neighborhood*

12  *Planning Council v. Seattle*, 155 Wash. App. 305, 312 (2010); *National Elec. Contractors Ass'n*

13  *v. Employment Sec. Dept. of the State of Washington*, 109 Wash. App. 213, 220-21 (2001).

14  There are three requirements for standing: (1) a plaintiff must have suffered an injury in fact – an

15  invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

16  imminent, not conjectural or hypothetical; (2) there must be a causal connection between the

17  injury and the conduct complained of – the injury has to be fairly traceable to the challenged

18  action of the defendant and not the result of the independent action of some third party not before

19  the court; and (3) it must be likely as opposed to merely speculative that the injury will be

20  redressed by a favorable decision. *Okanogan School Dist. # 105 v. Superintendent of Public*

21  *Instruction for the State of Washington*, 291 F.3d 1161, 1166 (9th Cir. 2002); *Washington Legal*

22  *Foundation v. Legal Foundation of Washington*, 271 F.3d 835, 847 (9th Cir. 2001).

23      Defendants contend that Plaintiffs cannot bring claims on behalf of Dalian Capstone.

24  Plaintiffs have alleged that they were injured and that they are not bringing a suit in a

representational capacity on behalf of Dalian Capstone. Dkt. 125, p. 10. In order to show standing as to the claims labeled as "Liability to Capstone", Plaintiffs must show that there was an injury in fact. Plaintiffs have alleged several theories as to the nature of the injury. Dkt. 125, 11-25.

Plaintiffs allege that the Court has already addressed the issue of standing in a prior order. Dkt. 125, p. 9. The Court, however, left open the question of whether Plaintiffs had standing to bring claims on behalf of Dalian Capstone or claims related to Dalian Capstone. Dkt. 125, p. 9; Dkt. 72, p. 6. The Court left open the question due to an undeveloped record submitted by the parties and in order to give the parties a chance to more fully develop the record and their arguments. It is now appropriate to address the issue since discovery has been completed.

Plaintiffs do not have standing to bring claims labeled as "Liability to Capstone." Plaintiffs first raise the issue of a settlement agreement between LG Tianjin and Dalian Capstone. Dkt. 125, p. 11. This is irrelevant because the Plaintiffs admitted that they are not presenting claims on behalf of Dalian Capstone and because Dalian Capstone is not a party to this litigation.

Plaintiffs appear to argue that since they directed Dalian Capstone to use the Lupoy resin and that Capstone was caused to have incurred investigative and corrective costs, that Plaintiffs suffered an injury. Dkt. 125, p. 13. This argument is not supported by the record, and the Plaintiffs have not provided legal authority to support such a claim. The burden of the moving party in summary judgment motion may be met by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case; once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 323-325. Plaintiffs do point to some declarations regarding harm. See Dkt. 125, p. 7-8; Dkt. 129, 131, 133. However,

1 these are conclusory, non specific statements. Such statements in affidavits are not sufficient to
2 withstand a motion for summary judgment. *Lujan*, 497 U.S. at 888-89. Moreover, "missing
3 facts" will not be "presumed." *Id*. Plaintiffs have not provided evidence, other than affidavits,
4 which shows Plaintiffs are liable to Dalian Capstone. Finally, Plaintiffs state that evidence at
5 trial will show that Plaintiffs have liability to Dalian Capstone. Dkt. 125, p. 13. The nonmoving
6 party, however, may not merely state that it will discredit the moving party's evidence at trial in
7 order to defeat a summary judgment motion. *T.W. Elect. Service Inc.*, 809 F.2d at 630.

8 Plaintiffs next argue that there is an injury or harm because they are liable under the
9 Uniform Commercial Code for wrongful rejection. Dkt. 125, p. 13-14. This claim is illusory.
10 The Plaintiffs have not provided evidence showing that Dalian Capstone is seeking redress
11 against Plaintiffs, and there is no evidence that the rejection was wrongful. Again, conclusory,
12 non specific statements in affidavits are not sufficient, and "missing facts" will not be
13 "presumed." *Lujan*, 497 U.S. at 888-89. Rule 56(e) requires the nonmoving party to go beyond
14 the pleadings and identify facts which show a genuine issue for trial. *See Celotex Corp.*, 477
15 U.S. at 323-325. Moreover, the Court should not litigate matters between the Plaintiffs and a
16 non-party. Plaintiffs also argue that Defendants assertion that customers cannot be sued by their
17 suppliers is erroneous. Dkt. 125, p. 14. Even if Plaintiffs are correct in their assertion, they still
18 have not shown a harm.

19 Plaintiffs also argue that under Washington law, "plaintiffs' legal exposure to Capstone is
20 a form of consequential damages flowing from LG's breaches of the promises made directly to
21 plaintiffs and from its misrepresentation to them." Dkt. 125, p. 16. Plaintiffs state that "[i]t was
22 entirely foreseeable to LG, or should have been, that Capstone would seek reimbursement of its
23 expenses when it was finally shown that the problems with the door frames were in no respect
24 blamable on Capstone…." Dkt. 125, p. 18. This is legal conclusion and does not create a

genuine issue of material fact. As noted above, Plaintiffs' "legal exposure" is conclusory and not supported by the record. Plaintiffs' assertion that Dalian Capstone will seek or is seeking reimbursement is unsupported.

Plaintiffs next argue that Plaintiffs had a contractual obligation to Capstone. Dkt. 125, p. 21. Plaintiffs state that as a result of Plaintiffs' requirements, Dalian Capstone incurred substantial losses for which Dalian Capstone is entitled to indemnity from Plaintiffs. Dkt. 125, p. 22. Plaintiffs' allegations are conclusory and unsupported by the record. Plaintiffs make legal conclusions that a contract exists and there was an implied duty, but presents no evidence to show that such a contract does exist.

Finally, Plaintiffs reargue that Defendants are in error regarding the settlement with Dalian Capstone. Dkt. 125, p. 22-25. As noted above, this is irrelevant. Dalian Capstone is not a party to this case. Any claims Dalian Capstone has against Defendants have not been proven to be an issue in this case.

Plaintiffs have failed to show that there was a harm or injury. The record is devoid of evidence satisfying the summary judgment standard, showing that there was an express or implied contract between Dalian Capstone which creates "legal exposure", showing that Dalian Capstone has legal claims against Plaintiffs, or showing that Plaintiffs are liable to Dalian Capstone under any other theory presented. Since Plaintiffs have failed to show there was a harm or injury, they do not have standing to assert "Liability to Capstone" claims against Defendants. For the foregoing reasons, Defendants' motion for partial summary judgment as to "Liability to Capstone" should be granted.

**C. PLAINTIFF RIGHT CONCEPT CLAIMS FOR "LOST PROFITS ON LOST SALES."**

Defendants claim that Right Concept's lost profits claim is fatally speculative. Dkt. 114,

1  p. 27.  Defendants state that Right Concept seeks more than $10 million in lost profits, a

2  combination of profits it allegedly lost in the past (2006 to mid-2010) and profits it would have

3  pocketed over the next nine years.  *Id.*  Defendants state that Right Concept's claim is supported

4  by the projections of Right Concept's financial expert, Kent Mordy.  Dkt. 114, p. 27-28.

5  Defendants assert that Mr. Mordy's projections are "methodologically unsound, devoid of

6  factual support, and shot through with unreasonable assumptions."  Dkt. 114, p. 28.

7        Plaintiff Right Concept appears to argue that in Washington State, only the fact of

8  damages must be proven to a "reasonable certainty," not the amount.  Dkt. 125, p. 25.

9        Defendants respond by arguing that Plaintiffs have not offered reasonably convincing

10 evidence indicating the amount of lost profits and that Mr. Mordy's testimony must be excluded

11 because it violates Fed.R.Evid. Rule 702 and 703.  Dkt. 136, p. 11-18.

12       Lost profits may be recovered as damages when (1) they are within the contemplation of

13 the parties at the times the contract was entered, (2) they are the proximate result of defendant's

14 breach, and (3) they are proven with reasonable certainty.  *Tiegs v. Watts*, 135 Wash. 2d 1, 17-18

15 (1998).  It appears that the parties are disputing whether damages are "proven with reasonable

16 certainty."

17       The amount of lost profits must be established with reasonable certainty.  *Tiegs*, 135

18 Wash. 2d at 18.  Lost profits cannot be recovered where they are speculative, uncertain and

19 conjectural.  *Id.*  Lost profits will not be denied where factual data is presented as a basis for

20 computing probable losses.  *Id.*  The usual method for proving lost profits is to establish a profit

21 history.  *Id.*  Lost profits will not be denied merely because a business is new if factual data is

22 available to furnish a basis for computation of probable losses.  *Larsen v. Walton Plywood Co.*,

23 65 Wash. 2d 1, 16-17 (1964).  Expert testimony alone is sufficient basis for an award for loss of

24 profits.  *Id.*  Expert opinions, however, must be based upon tangible evidence rather than upon

1  speculation and hypothetical situations. *Id*. at 17.  The doctrine respecting the matter of certainty

2  is concerned more with the fact of damage than with the extent or amount of damage. *Riverview*

3  *Floral, Ltd. v. Watkins*, 51 Wash. App. 658, 663 (1988); *Golf Landscaping, Inc. v. Century*

4  *Construction* Co., 39 Wash. App. 895, 903 (1985); *Alpine Industries, Inc. v. Gohl*, 30 Wash.

5  App. 750, 754-55 (1981).  "[T]he uncertainty which prevents a recovery is uncertainty as to the

6  fact of the damage and not as to its amount and there where it is certain that damage has resulted

7  mere uncertainty as to the amount will not preclude the right of recovery." *Gaasland Co. v.*

8  *Hyak Lumber & Millwork*, 42 Wash. 2d 705, 713 (1953).  "The damages must be susceptible of

9  ascertainment in some manner other than by mere speculation, conjecture, or surmise and by

10  reference to some definite standard, such as market value, established experience, or direct

11  inference from known circumstances." *Id*.

12  Plaintiffs' calculations regarding Right Concept's lost profits are not speculative and are

13  based on a reasonable standard.  The Court notes that while Defendants seek to exclude Mr.

14  Mordy's testimony for consideration in this summary judgment motion, they have not moved to

15  exclude his testimony from the case entirely.  For the purposes of this motion only, the Court

16  will consider the testimony of Mr. Mordy and give his testimony its due weight.  The court must

17  resolve any factual issues of controversy in favor of the nonmoving party only when the facts

18  specifically attested by that party contradict facts specifically attested by the moving party. *T.W.*

19  *Elect. Service Inc.*, 809 F.2d at 630.  Defendants do not contest that there were damages incurred,

20  only that the damage estimates are speculative and not based on fact.  Plaintiff Right Concept,

21  however, has provided varying damage amounts.  The amounts are based on a reasonable

22  methodology with various assumptions. See Dkt. 131, ¶¶ 3-29, p. 13-14.  Right Concept did

23  provide a basis for its methodology which is reasonable and gave a detailed explanation for the

24  calculations. *Id*.  While Defendants note that the claimed damage amounts differ greatly, the

standard is that damages must be susceptible of ascertainment in some manner other than by mere speculation, conjecture, or surmise. Fixing a particular amount is not dispositive. Moreover, while the claimed damage amount remains uncertain, the methodology appears to be consistent. Plaintiff Right Concept has shown enough to survive summary judgment. For the foregoing reasons, Defendants' motion for summary judgment as to Plaintiff Right Concept's lost profit claims should be denied.

**D. PLAINTIFF TRINITY'S CLAIM FOR POTENTIAL, FUTURE WARRANTY REPAIRS.**

Defendants assert that Trinity's claim for potential, future warranty repairs should be dismissed because it is "fatally speculative." Dkt. 114, p. 22. Defendants argue that Trinity's claim is speculative because (1) there is no evidence beyond Trinity's subjective belief that every doorlite frame made with Lupoy and sold by Trinity will crack; (2) according to Trinity's corporate representative, it is "impossible" to determine whether any frame in the field was made with Lupoy as opposed to resin made by other manufacturers; and (3) Trinity does not pay anything out-of-pocket per warranty visit; its warranty service provider instead charges them a percentage of sales. Dkt. 114, p. 22.

Plaintiff Trinity asserts that they don't have to prove an exact amount for damages, but only that damages were incurred. Dkt. 125, p. 31. Trinity argues that it regularly renegotiates the contract with its warranty service provider. Dkt. 125, p. 32. Trinity alleges that an increase in the average cost of an actual warranty call increases its warranty costs. *Id*.

Defendants respond by pointing out that Trinity admits that it pays its warranty service provider a commission calculated as a percentage of Trinity's net sales to Home Depot, not based on the number of site visits. Dkt. 136, p. 8. Defendants also state that what Trinity has paid its warranty service provider has gone down. Dkt. 136, p. 8-9.

1    Even if the Court were to resolve any factual issues of controversy in favor of the

2    nonmoving party, Plaintiff Trinity's future warranty claims would be speculative. Trinity has

3    admitted that what is paid to the warranty service provider is based on the percentage of sales. It

4    is undisputed that Trinity does negotiate with the warranty service provider to set the price.

5    While Trinity does allege that costs may rise due to the increased visits, it has not shown that it

6    would incur an increase in warranty costs. It is conjecture whether future negotiations would

7    necessarily lead to higher warranty costs for Trinity. Given the fact that Defendants have shown

8    that Trinity's warrant costs have actually gone down, Trinity would need to show that

9    negotiations of future contracts with its warranty service provider, whoever that may be in future,

10   would lead to increased warranty costs. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586

11   (nonmoving party must present specific, significant probative evidence, not simply "some

12   metaphysical doubt.") It is not enough to merely allege that negotiations will lead to increased

13   warranty costs. Trinity's future warranty costs are simply too uncertain.

14   For the foregoing reasons, Defendants' motion for summary judgment as to Plaintiff

15   Trinity's future warranty claims should be granted.

16   **E. PLAINTIFF TRINITY'S TORT CLAIMS UNDER THE ECONOMIC LOSS RULE.**

17   Defendants assert that Trinity's tort claims must be dismissed based on Washington

18   State's economic loss rule. Dkt. 114, p. 37. Defendants state that it is undisputed that a

19   contractual relationship exists between LG America and Trinity. *Id*. Defendants specifically

20   state that the economic loss rule bars all tort claims including claims for intentional

21   misrepresentation. *Id*.

22   Plaintiffs claim that a recent Washington State Supreme Court decision confirms that the

23   existence of a contract does not override or exclude tort claims. Dkt. 125, p. 34; *See Eastwood v.*

24   *Horse Harbor Foundation, Inc.*, 2010 WL 4351986 (Wash. 2010). Plaintiffs state that it is

1 seeking to recover for LG's representations concerning the quality of Lupoy supplied to

2 Capstone and the cause of the cracking. Dkt. 125, p. 35-36.

3 Defendants respond by stating that the Washington Supreme Court affirmed the risk-of-

4 harm rule from *Stuart v. Coldwell Banker Commercial Group, Inc*., 745 P.2d 1284 (Wash.

5 1987). *Eastwood*, 2010 WL 4351986 at *8, *id*. at *17 (Chambers, J., concurring). Dkt. 136, p.

6 19. Defendants state that under the risk-of-harm rule, product defects are generally

7 unrecoverable in tort. *Id*. Defendants allege this is merely a product liability case. *Id*.

8 The Washington Product Liability Act ("WPLA") creates a single cause of action for

9 product-related harms, known as a "product liability claim." RCW 7.72.010(4); *Washington*

10 *State Physicians Ins. Exch. & Ass'n v. Fisons Corp*., 122 Wash. 2d 299, 322 (1993); *Washington*

11 *Water Power Co. v. Graybar Elec. Co.*, 112 Wash. 2d 847, 853 (1989). A product liability claim

12 includes "any claim or action brought for harm cause by the manufacture, production, making,

13 construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings,

14 instruction, marketing, packaging, storage or labeling of the relevant product." RCW

15 7.72.010(4). "It includes, but is not limited to, any claim or action previously based on...

16 misrepresentation, concealment, or nondisclosure, whether negligent or innocent; or other claim

17 or action previously based on any other substantive legal theory except fraud, intentionally

18 caused harm or a claim or action under the consumer protection act, chapter 19.86 RCW." *Id*.

19 "Harm" under WPLA excludes direct or consequential economic loss, leaving the law of

20 sales contracts as the sole source of a plaintiff's remedy for economic loss. RCW 7.72.010(6);

21 *Eastwood* at *8. To differentiate a harm that is an "economic loss" from a harm for which

22 damages are recoverable in tort, the risk-of-harm test determines whether the harm can

23 reasonably be traced back to the tort duty. *Eastwood* at *8; *Alejandre v. Bull*, 159 Wash. 2d 674,

24 684 (2007); *Graybar*, 112 Wash. 2d at 867. When a product defect results in a personal injury or

ORDER - 14

1  damage to other property, the cause can plainly be a breach of the tort duty. *Eastwood* at *8.
2  When a product defect results in injury only to the product itself, however, the risk-of-harm must
3  be carefully analyzed. *Id*.

4  Under the risk-of-harm analysis, two approaches are taken to determine if the damages
5  are economic losses; the "sudden and dangerous" test and the "more evaluative approach."
6  *Graybar*, 112 Wash. 2d at 866-67; *see also Hofstee v. Dow*, 109 Wash. App. 537, 544-46 (2001);
7  *Touchet Valley Grain Growers, Inc. v. OPP & Seibold General Construction*, 119 Wash. 2d 334,
8  351-55 (1992). Under the "sudden and dangerous" test, if the failure of a product is the result of
9  a sudden and dangerous event, it is remediable under tort principles. *Touchet*, 119 Wash. 2d at
10 351. If no such event has occurred, the product failure is deemed an economic loss. *Id*. The
11 "more evaluative approach" examines interrelated factors such as the nature of the defect, the
12 type of risk, and the manner in which the injury arose to determine whether a claim is related to
13 the safety-insurance policy of tort or the expectation-bargain protection policy of contract law.
14 *Id*. Like the sudden and dangerous test, the evaluative approach considers whether the injury
15 arose as the result of a calamitous and sudden event. *Id*. The WPLA thus "explicitly confines
16 recovery to physical harm suffered by persons and property and leaves purely economic loss to
17 the UCC." *Hoftstee*, 109 Wash. App. at 534.

18 Plaintiff Trinity's tort claim falls under the WPLA because it involves a product, a resin,
19 used to produce another product, doorlites. The WPLA explicitly states that misrepresentation,
20 whether negligent or innocent is included in the definition of product liability claims. Under the
21 WPLA, Plaintiffs' claim for negligent misrepresentation is barred because the harm is an
22 economic loss under either risk-of-harm analysis approach. There was no sudden and dangerous
23 failure of the product alleged in the pleadings, nor was there a sudden and calamitous event.
24 Since Plaintiff Trinity's claim is an economic loss, it does not have a cause of action under torts.

1 For the foregoing reasons, Defendants' motion for summary judgment as to Plaintiff Trinity's
2 tort claims should be granted.

### III. ORDER

The Court does hereby find and **ORDER**:

(1) Defendants' Motion for Partial Summary Judgment (Dkt. 114) is **GRANTED IN PART AND DENIED IN PART** as set forth above; and

(2) The Clerk is directed to send copies of this Order to all counsel of record and any party appearing *pro se* at said party's last known address.

Dated this 7th day of December, 2010.

*/s/ Robert J. Bryan*

ROBERT J. BRYAN
United States District Judge